IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2021 NOV -2  AM 10: 22

21cv8892

**M.A.G.A.** (MAKE AFRICA GREAT AGAIN)
HUMAN RIGHTS ANGELS INTERNATIONAL
REGISTRY INC. et al.,
**B**y their Next friend:
Jose D. Susana Vice Chairman,
Of the **M.A.G.A.** (MAKE AFRICA GREAT AGAIN)
HUMAN RIGHTS ANGELS INTERNATIONAL REGISTRY INC.

        Plaintiff,

v.                                              Civil Action No.
                                                          Jury Demand
                                                      VERIFIED COMPLAINT

IMMIGRATION & CUSTOMS
ENFORCEMENT ("ICE"), Seven
Unknown DOE Agents of DHS/CDF/
Oasis/Global Tel Link et al., &
UNITED STATES ex rel.,
(Sued individually & officially)
                Defendants.

**RETALIATORY CONSPIRACY TO VIOLATE THE CAT
BY ATTEMPTS TO DEPRIVE OF CIVIL RIGHT TO PETITION
ALIEN TORT ACTION PURSUANT TO 28 U.S.C. § 1350**

1

I. JURISDICTION & VENUE

i. Law of Nations. This is a tort action brought under the Convention Against Torture and the Alien Tort Claim Act. the court has jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1350. See:
ii. The United States District Court for the Southern District of New York has Diversity Jurisdiction and is an appropriate venue pursuant to the law of nations.

## II. PLAINTIFFS

Organizational Plaintiff M.A.G.A. Make Africa Great Again Human Rights Angels International REGISTRY Inc., (at the times mentioned herein was) an unincorporated ecclesiastical social justice association. Pharaoh Momolu V.S. Sirleaf I, , Kwayee M. Tarty, a quasi- U.S./Liberian National, Ravindra Patel, Theophilus Tari Agedah: stateless refugee Paul White & Randolph Ratcliffe Richards; Jamaican Nationals, Adhnanu Fahed Miri, & Thomas Nganga; Kenyan citizens, Mikhail Shapovalov; a Russian citizen, Yerrisson Antonio Rodriguez; Dominican Nationals, Elmer Ottonid Tenas Silva a Guatemalan National, Mr. Luis Espinoza; a Venezuelan National, Quacy Thorne a Guyanese National, Paul Reyes a Mexican National, Jaime Daniel Navarro Cerritos, Jose O. Membreno & Rickardo Jose Guido, David Noe Alvarado, Ferardo Molina, Carlos Armando Gomez, Jimmy Nathaniel Sandoval, Santos Portillo, Henry Giovanni, Alex Car-Carmo & Christian Araya; Salvadorian Nationals, Lemos Claro Delis, Rigoberto Duran Cruz, Christian Hernandez Mej'a & Angel Ruiz; Honduran National, Lucson Appolon; a Haitian citizen, & Mandiaye Mamadou Moustapha Sene;Thomas Olu: Ghana citizen, a Senegalese National, Mr. Ronbing Zhang a Hong Kong National, Mr. Garesh Madevapali an Indian National, Kuac Kon a Sudanese National, Kuowame Kouassi an Ivorian/French National, & Boupone Chanthachaem, Festus Musa, Quacy Thorne, Fazili Chancelier, Charles Momodou Thomas, Rony Clavel, Elias Funes Rivera of El Salvador, Amilcar Alvarado Mendoza of Guatemala, Raphael Coello of Honduras, Julio Enrique Ortiz Rivera of San Miguel, El Salvador, Marcos Martinez Escalon of Honduras, Juan Jose Paredes Alfaro of El Salvador, Hernando Reyes Serrano Molina of El Salvador, Ever Josue Claros Vasquez of Honduras, Miguel Angel Carranza of El Salvador,Ford Martinez Palma, Ronald Gonzalez of Guatemala, Henry Savala of El Salvador other stateless person ("We", "Us", "Our", "Plaintiffs") are a class of refugees; as defined by the United Nations High Commission for Refugees ("UNHCR").

## III. DEFENDANTS

i.. DOE Defendant ICE/ United States ex rel. is a state actor of the United States acting under color of federal law. Its address is: U.S. Department of Homeland Security
U.S. Immigration & Customs Enforcement
500 12th Street, SW, STOP 5902
Washington, D.C. 20536-5902
ii. DOE Defendant Superintendent Perry, is a state actor of the United States acting under color of state or federal law. his address is: Caroline Detention Facility

2

       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427

 iii. DOE Defendant Mrs. Beazley is a CDF Law Librarian/state actor of the United States acting under color of
state or federal law. her address is: Caroline Detention Facility
       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427

iv. DOE Defendant Guidotti (DO) is a state actor of the United States acting under color of state or federal law. his address is: Caroline Detention Facility
       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427

v. DOE Defendant P. Ramirez (DO) is a state actor of the United States acting under color of state or federal law. his address is: Caroline Detention Facility
       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427

vi. DOE Defendant Michael Coles (DO) is a state actor of the United States acting under color of state or federal law. his address is: Caroline Detention Facility
       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427

vii. DOE Defendant Derrick Anderson is a state actor of the United States acting under color of state or federal law. His address is: Caroline Detention Facility
       11903 S.W.Lewis Memorial Drive
       Bowling Green, Virginia 22427


The true names or capacities, whether individual, corporate, associate, or otherwise, and defendantship of DOES i.–x., inclusive, are unknown at the time of the filing of this Tort to Plaintiffs, who therefore sue said defendants by such fictitious names and will ask leave of court to amend this complaint to show their true names or capacities and Defendantship when the same becomes ascertained. Plaintiffs are informed and believe , and based upon said information and belief, allege that each of the defendants designated as a DOE herein was responsible negligently, or in some other actionable manner, for the, events, and happenings referred to herein that proximately caused injury to plaintiffs as herein described.

        Next Friend Standing


New York Native, Jose D. Susana; of 1766 E. 172 Street Bronx New York 10472, is the Vice Chairman of the **M.A.G.A.** (MAKE AFRICA GREAT AGAIN) HUMAN RIGHTS ANGELS INTERNATIONAL REGISTRY INC. has Organizational, jailhouse lawyer, as well as, next friend standing; pursuant to Auleta v. La France, 233 F.Supp. 2d 396, 400 (N.D.N.Y. 2002), Newell v. Sauser, 79 F.3d 115, 117-18 (9th Cir, 1995), Adam v. James, 784 F.2d 1077, 1081 (11th Cir. 1986) and Rhodes v. Robinson, 612 F.2d 766, 769 (3RD Cir. 1969) to assert the rights of these Plaintiffs. Wherefore, I Jose D. Susana, next friend for the plaintiffs being of sound mind, , as a U.S. National, honorably (Twice) discharged, war hero and veteran of both the United States Navy & Army turned "ICE statutorily created stateless U.S. war hero" detainee; with permanent allegiance to the U.S. motivated to bring about social change and protect the

constitutional rights in the several states of our great Union, as well as, in its ICE detention facilities – as a form of my "political expression" and political association; much as the Supreme Court has held litigation by such organizations as mine that exist outside of the prison setting to be, an exercise of my (as well as the Plaintiffs') rights secured under both the supremacy Clause and the First Amendment to the United States Constitution. Do hereby submit the foregoing "Litigation in good faith" in order to assert the rights of the below mentioned refugees who for valid reasons cannot assert the same due to their incompetence. The Plaintiffs' next friend herewith humbly motions the court for sub-class certification. In addition, prays that the court request for the appointment of class counsel to institute this action on behalf of these incompetent Plaintiffs.

Wherefore, I declare that Plaintiffs do aver as follows:

### STATEMENT OF FACTS

1. Organizational Plaintiff M.A.G.A. Make Africa Great Again Human Rights Angels International REGISTRY Inc., (at all times mentioned herein was an unincorporated ecclesiastical social justice association), Pharaoh Momolu V.S.Sirleaf is its priest, Chairman & President. Mr. Jose D. Susana is the Organizations Vice Chairman and next friend. The Ecclesiastical social justice association has standing, as well as priest penitent privilege to assert the rights of its penitents who are refugees from all over the world (that either were or are) detained at the Caroline Detention Facility ("CDF") in the custody of ICE.
2. On or about 10/1/2021 Plaintiffs submitted a grievance to the OIG which led to the Alien Tort/CAT action entitled Agedah v. ICE, No. 2:21-CV-07975.
3. 0n or about 10/5/2021, the Plaintiffs filed a class action entitled Agedah v. ICE, No. 2:21-CV-07975.

4. On 10/12/2021 the Plaintiffs were told by law librarian Mrs. Beazley that she was told by ICE that she was to no longer Notarize or print Plaintiffs' civil pleadings.
5. On 10/12/2021, Plaintiffs' next friend, Jose D. Susana spoke to the Ice Defendants asking why the Plaintiffs (and he) were being denied their rights to petition the government, secured under the First Amendment to the U.S. Constitution.
6. Plaintiffs' next friend, Jose Susana and Plaintiff Pharaoh Momolu V.S. Sirleaf I. were then ushered into a room, while plaintiff Theophilus Agedah was isolated into a separate room. There Plaintiff's next friend and Plaintiff Sirleaf were told; by Defendant Guidotti, that the direct causal proximity of the Defendants' current campaign of retaliation was "because they (the Plaintiffs) have sued ICE & CDF [for violating the CAT against them]". In addition, they were told (by defendants Ramirez, Guidotti, and Coles) that ICE and CDF were not obligated to provide them any notary or civil law library services if they are being sued [for violating the CAT against them]" And furthermore, that this policy was DHS/ICE's and CDF's official response pursuant to some "PBNDS policy" and that said policy was "authorized by Derrick Anderson". Wherefore an obviously founded grievance was submitted to the OIG.
7. On or about 10/19/2021 at about 10 Am, Sgt. White approached Plaintiff Sirleaf and his next friend to verify their signatures for the request forms they had submitted (on10/16/2021) requesting money orders for the purposes of incorporating the Organizational Plaintiff.

4

8. On 10/19/2021 Sgt, White approved the money orders for the Organizational plaintiff's incorporation (for forwarding to the America Corporation Enterprises Inc.)
9. On 10/20/2021, Colonel Paul Perry also approved plaintiffs' above mentioned transaction.
10. On 10/21/2021 officer Marisol Mendes told Plaintiff Sirleaf that the policy for forwarding the Plaintiff's protected conduct via email to Director Modou Thomas; a radio host/member of the "media" was that the plaintiffs simply needed to submit a request form for her to forward said legal/specialty mail.
11. On 10/22/2021, while chilling/obstructing plaintiffs protected conduct in the CDF's law library, Defendant Beasley & Ramirez were both shown excerpts from the Organizational Plaintiff's incorporation documents, as well as, made aware of plaintiffs suits against them (filed by plaintiffs both individually & as a body corporate) in the presence of Officer Marisol Mendes; who promptly then alerted plaintiffs that she had been ordered to chill any attempts by plaintiffs to email the media (thus including Organizational plaintiff's Board Member; Modou Thomas) by refusing to send such email(s) which included Plaintiffs' lawsuits against the Defendants and Organizational Plaintiff's Director's copies of Plaintiffs' Bylaws and Articles of Incorporation. The Defendants' order to chill Plaintiffs' protected conduct given in concert or by agreement of by whichever two or more of the Defendants to Officer Marisol Mendes on behalf of ICE'S campaign of retaliation against the Plaintiffs, violated plaintiffs rights to peacefully assemble, freedom of political speech, free exercise of religion, and right to petition the government for a redress of their grievances, secured under the First amendment to the United States Constitution.
12. (a)The Defendants and each of them knew (or reasonably should have known (a) that plaintiffs rights to peacefully assemble, freedom of political speech, free exercise of religion, and to petition the government for a redress of their grievances was Plaintiffs' protected conduct. Wherefore an obviously founded grievance was submitted to the OIG.
13. 

(b)The Plaintiffs believe that the Defendants and each of them violated their rights based upon the <u>Defendants' own invidious class-based racial animus against immigrants</u>- whom the Defendants apparently are of the prejudice that the First Amendment to the United States Constitution does not apply to the immigrant plaintiffs. On 10/22/2021, Both Defendants Ramirez and Beasley were made aware of Plaintiffs' charge against such <u>acts or omissions of these Defendants and each of them - being based on their own invidious class-based racial animus against immigrants.</u>

On 10/22/2021, while still chilling Plaintiffs' protected conduct (via email) these Defendants forwarded Plaintiffs' (and their next friend's) incorporation fees (via mail room clerk Mrs. Cousins) to American Corporate Enterprises Inc. (Plaintiffs' soon to be Registered Agent).

## LEGAL CLAIMS

Plaintiffs re-allege and incorporate by reference paragraphs 1 – 11.

12. The violations (and conspiracy to violate) the First Amendment right to Petition the Government for a redress of their grievances, peacefully assemble, freedom of political speech, & retaliation against the Plaintiffs' free exercise of religion Clauses of the U.S. Constitution (and Plaintiffs' rights secured thereunder), constituted a First Amendment Conspiracy to deprive of civil rights claim under both CAT (i.e. the Supremacy Clause) and the First Amendment to the United States Constitution. Moreover, the Defendants and each of them acts or omission violated plaintiffs' rights to be protected from torture; via inter alia retaliation against Plaintiffs exercising of their protected conduct against their arbitrary or indefinite detention. Moreover, such acts and omissions constituted a human rights violation under the Torture Victims Protection Act 28 U.S.C. § 1350 et seq. in addition to the Convention Against Torture Act. Plaintiffs are both refugees, as well as, immigration detainees with a range of serious health conditions.

5

Together Plaintiffs claim Defendants have failed to ensure minimum lawful conditions of confinement at CDF immigration detention facility.

## LEGAL THEORY

Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

**Adopted and opened for signature, ratification and accession by General Assembly resolution 39/46 of 10 December 1984 entry into force 26 June 1987, in accordance with article 27 (1)**

The States Parties to this Convention,

Considering that, in accordance with the principles proclaimed in the Charter of the United Nations, recognition of the equal and inalienable rights of all members of the human family is the foundation of freedom, justice and peace in the world,

Recognizing that those rights derive from the inherent dignity of the human person,

Considering the obligation of States under the Charter, in particular Article 55, to promote universal respect for, and observance of, human rights and fundamental freedoms,

Having regard to article 5 of the Universal Declaration of Human Rights and article 7 of the International Covenant on Civil and Political Rights, both of which provide that no one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment,

Having regard also to the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted by the General Assembly on 9 December 1975,

Desiring to make more effective the struggle against torture and other cruel, inhuman or degrading treatment or punishment throughout the world,

Have agreed as follows:

## PART I

### Article 1

1. For the purposes of this Convention, the term torture means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as

6

obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

2. This article is without prejudice to any international instrument or national legislation which does or may contain provisions of wider application.

### Article 2

1. Each State Party shall take effective legislative, administrative, judicial or other measures to prevent acts of torture in any territory under its jurisdiction.

2. No exceptional circumstances whatsoever, whether a state of war or a threat of war, internal political instability or any other public emergency, may be invoked as a justification of torture.

3. An order from a superior officer or a public authority may not be invoked as a justification of torture.

### Article 3

1. No State Party shall expel, return (refouler) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

### Article 4

1. Each State Party shall ensure that all acts of torture are offences under its criminal law. The same shall apply to an attempt to commit torture and to an act by any person which constitutes complicity or participation in torture.

2. Each State Party shall make these offences punishable by appropriate penalties which take into account their grave nature.

7

## Article 5

1. Each State Party shall take such measures as may be necessary to establish its jurisdiction over the offences referred to in article 4 in the following cases:

(a) When the offences are committed in any territory under its jurisdiction or on board a ship or aircraft registered in that State;

(b) When the alleged offender is a national of that State;

(c) When the victim is a national of that State if that State considers it appropriate.

2. Each State Party shall likewise take such measures as may be necessary to establish its jurisdiction over such offences in cases where the alleged offender is present in any territory under its jurisdiction and it does not extradite him pursuant to article 8 to any of the States mentioned in paragraph I of this article.

3. This Convention does not exclude any criminal jurisdiction exercised in accordance with internal law.

## Article 6

1. Upon being satisfied, after an examination of information available to it, that the circumstances so warrant, any State Party in whose territory a person alleged to have committed any offence referred to in article 4 is present shall take him into custody or take other legal measures to ensure his presence. The custody and other legal measures shall be as provided in the law of that State but may be continued only for such time as is necessary to enable any criminal or extradition proceedings to be instituted.

2. Such State shall immediately make a preliminary inquiry into the facts.

3. Any person in custody pursuant to paragraph I of this article shall be assisted in communicating immediately with the nearest appropriate representative of the State of which he is a national, or, if he is a stateless person, with the representative of the State where he usually resides.

4. When a State, pursuant to this article, has taken a person into custody, it shall immediately notify the States referred to in article 5, paragraph 1, of the fact that such person is in custody and of the circumstances which warrant his detention. The State which makes the preliminary inquiry contemplated in paragraph 2 of this article shall promptly report its findings to the said States and shall indicate whether it intends to exercise jurisdiction.

8

*Article 7*

1. The State Party in the territory under whose jurisdiction a person alleged to have committed any offence referred to in article 4 is found shall in the cases contemplated in article 5, if it does not extradite him, submit the case to its competent authorities for the purpose of prosecution.

2. These authorities shall take their decision in the same manner as in the case of any ordinary offence of a serious nature under the law of that State. In the cases referred to in article 5, paragraph 2, the standards of evidence required for prosecution and conviction shall in no way be less stringent than those which apply in the cases referred to in article 5, paragraph 1.

3. Any person regarding whom proceedings are brought in connection with any of the offences referred to in article 4 shall be guaranteed fair treatment at all stages of the proceedings.

*Article 8*

1. The offences referred to in article 4 shall be deemed to be included as extraditable offences in any extradition treaty existing between States Parties. States Parties undertake to include such offences as extraditable offences in every extradition treaty to be concluded between them.

2. If a State Party which makes extradition conditional on the existence of a treaty receives a request for extradition from another State Party with which it has no extradition treaty, it may consider this Convention as the legal basis for extradition in respect of such offences. Extradition shall be subject to the other conditions provided by the law of the requested State.

3. States Parties which do not make extradition conditional on the existence of a treaty shall recognize such offences as extraditable offences between themselves subject to the conditions provided by the law of the requested State.

4. Such offences shall be treated, for the purpose of extradition between States Parties, as if they had been committed not only in the place in which they occurred but also in the territories of the States required to establish their jurisdiction in accordance with article 5, paragraph 1.

*Article 9*

1. States Parties shall afford one another the greatest measure of assistance in connection with criminal proceedings brought in respect of any of the offences referred to in article 4, including the supply of all evidence at their disposal necessary for the proceedings.

2. States Parties shall carry out their obligations under paragraph I of this article in conformity with any treaties on mutual judicial assistance that may exist between them.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that the court enter judgment granting plaintiffs:

15. A declaration that the acts and omissions described herein violated plaintiffs' rights secured under the Constitution, law, & treaties of the United States.

16. A preliminary and permanent injunction ordering defendant U.S. ex rel. to comply with the court's Fraihat v. ICE Court Order, as well as, their Oath or Affirmation to support the U.S. Constitution by ceasing and desisting all such acts or omissions described herein.

17. Compensatory damage in the amount of 1.5 Million US dollars against the Defendants jointly and severally.

18. Punitive damage for the amount of 21 Million US dollars against the defendant.

19. A jury trial on all issues triable by jury.

20. Plaintiffs' cost in this suit.

21. Any additional relief the court deem just, proper, and equitable.

DATE; October 21, 2021

## VERIFICATION

We have read the foregoing complaint and hereby verify that the matter allege therein are true. I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

digitally signed Jose D.Susana,
For the **M.A.G.A.** (MAKE AFRICA GREAT AGAIN)
HUMAN RIGHTS ANGELS
INTERNATIONAL REGISTRY INC. [SEAL]

_____

Names of Signatories:
<sup>digitally signed</sup> Pharaoh Momolu V.S. Sirleaf JI.,
Ravindra Patel, Teophilus Tari, Agedah, Kwayee
M. Tarty, Adhnanu Fahed Miri, & Thomas
Nganga, Mikhail Shapovalov, Paul White,
Randolph Ratclife Richards , KuacKon, Rongbin
Zhang, Garesh Madevapali, Jose Susaña,
Yerrisson Antonio Rodriguez, Elmer Ottonid
Tenas Silva, Mr. Luis Espinoza, Paul Reyes, Jaime
Daniel Navarro Cerritos, Jose O. Membreno,
Rickardo Jose Guido, David Noe Alvarado,
Ferardo Molina, Carlos Armando Gomez, Jimmy
Nathaniel Sandoval, Santos Portillo, Alex Car-
Carmo & Christian Araya, Lemos Claro Delis,
Rigoberto Duran Cruz, Christian Hernandez Mej'a
& Angel Ruiz, Lucson Appolon, Quacy Thorne a
Guyanese National; Mandiaye Mamadou
Moustapha Sene, Festus Ford Martinez Palma,
Ronald Gonzalez of Guatemala, Henry Savala of
El Salvador Musa, Quacy Thorne,
Fazili Chancelier,
Henry Giovanni, Sene,Thomas Olu, Charles
Momodou Thomas, Rony Clavel,
Boupone Chanthachaem, Elias Funes Rivera of El Salvador,
Amilcar Alvarado Mendoza of Guatemala, Raphael Coello of Honduras,
Julio Enrique Ortiz Rivera of San Miguel of El Salvador,
Marcos Martinez Escalon of Honduras,
Juan Jose Paredes Alfaro of El Salvador,
Hernando Reyes Serrano Molina of El Salvador,
Ever Josue Claros Vasquez of Honduras,
Miguel Angel Carranza of El Salvador,
& Rolando Miranda Puerto